**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER POWERS, | ) | No. EDCV 04-0359 CW |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I. BACKGROUND

Plaintiff Christopher Powers was born on September 28, 1962, and was forty years old at the time of both of his administrative hearings. [Administrative Record, "AR," 29, 44, 81.] He has a tenth grade education and past relevant work experience as a truck driver

and firefighter. [AR 12.] Plaintiff claims disability on the basis of low back pain with radiculopathy, hepatitis C and bipolar affective disorder. [Joint Stipulation, "JS," 3.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on March 25, 2004, and filed on April 5, 2004. On October 21, 2004, defendant filed plaintiff's Administrative Record ("AR"). On December 21, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income ("SSI") on December 27, 2001, alleging disability since December 1, 2001. [JS 3, AR 12.] An administrative hearing was held on June 30, 2003, and a supplemental hearing was held on September 10, 2003, each before Administrative Law Judge ("ALJ") John W. Belcher. [Transcript, AR 29, 44.] Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Sami Nafoosi, medical expert Joseph Malancharuvil, and vocational expert David Rinehart. [Transcript, AR 30, 45.] The ALJ denied benefits on November 4, 2003. [Decision, AR 16.] When the Appeals Council denied review on January 21, 2004, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the

court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V. DISCUSSION

#### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v.

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2001 (step one), that plaintiff had "severe" impairments, namely a probable herniated disc, hepatitis C, a personality disorder and alcohol abuse (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 14, 15.]  The ALJ found that plaintiff did not have the RFC to perform his past relevant work (step four). [AR 16.]  At step five, the ALJ noted that, although Rule 202.18 of the Medical-Vocational Guidelines ("Grids") indicated plaintiff would be found "not disabled," use of the Grids was appropriate only as a framework. [AR 15.]  The ALJ relied on the VE's evidence that plaintiff could perform the job of a small products assembler, cleaner/housekeeper, or shoe packager to reach the conclusion that plaintiff was not disabled and, thus, denied benefits. [Id.]

### C. ISSUES IN DISPUTE

The Joint Stipulation presents three disputed issues[2]:

---

Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

[2] The Joint Stipulation identifies a fourth issue regarding the adequacy of the hypothetical questions posed to the vocational expert, but plaintiff chose not to brief this issue. [JS 18.]  In addition, the resolution of the other three issues in favor of defendant (in which the court finds that the ALJ properly assessed the medical evidence) requires the conclusion that the hypothetical questions

1. Whether the ALJ erred in his assessment of the severity of plaintiff's impairments;

2. Whether the ALJ erred in his assessment of plaintiff's credibility; and

3. Whether the ALJ erred in relying on the medical expert's testimony regarding the severity of plaintiff's mental impairments.

[JS 4.]

**D. ISSUE ONE: THE SEVERITY OF PLAINTIFF'S IMPAIRMENTS**

The salient arguments presented by plaintiff regarding Issue One are that plaintiff had "severe" impairments that were improperly ignored by the ALJ and that the ALJ's assessment of plaintiff's RFC failed to account for plaintiff's back pain.[3]

In his decision, the ALJ found at Step Two of the sequential evaluation that plaintiff's "severe" impairments included a probable herniated disc, hepatitis C, personality disorder and alcohol abuse. [AR 14.] Plaintiff argued that the ALJ should have considered medical evidence of additional impairments, including hepatitis A, elevated liver enzymes, a recurring "poison oak"-like skin infection, and bilateral S1 radiculopathy from left sciatic pain. [JS 4.]

An ALJ must consider the cumulative effects of all of a claimant's impairments without regard to whether any impairment, if considered individually, would be found "severe." See Ingram v. Barnhart, 72 Fed. Appx. 631, 635 (9th Cir. 2003). In this case,

---

posed to the vocational expert, based on the ALJ's assessment of the medical evidence, were legally adequate.

[3] Plaintiff presents several other arguments in Issue One regarding his mental impairments, including that the medical evidence establishes that plaintiff has a personality disorder, the psychiatric evidence relied upon by the ALJ was contradictory, and the ALJ ignored evidence of plaintiff's mental retardation. [JS 5-6.] These arguments will be addressed with similar ones in Issue Three.

however, the medical evidence does not demonstrate the existence of additional impairments, other than those already delineated by the ALJ, at the time of the ALJ's decision.  Although an undated medical record reveals that plaintiff tested positive for hepatitis A, medical expert Nafoosi testified that this merely indicated a previous infection that would not lead to chronic liver disease. [AR 39, 441.] Dr. Nafoosi also testified that the elevation of transaminases in plaintiff's liver were attributable to his hepatitis C, which was subsequently counted as a "severe" impairment. [AR 14, 38.] Plaintiff's "poison oak"-like skin infection, diagnosed as contact dermatitis in March 2003, was successfully treated with no indication of a recurrence. [AR 436.]  Finally, plaintiff's bilateral S1 radiculopathy was adequately taken into account when the ALJ found that plaintiff's low back pain was a severe impairment. [AR 14.] Accordingly, plaintiff failed to establish the existence of additional impairments that should have been considered in Step Two of the sequential evaluation.

Plaintiff further argues that the RFC assessed by the ALJ did not take into account his chronic back pain. [JS 5.]  The hearing transcript indicates, however, that medical expert Nafoosi did consider plaintiff's pain when assessing an RFC.  Specifically, Dr. Nafoosi acknowledged that plaintiff did have pain, but concluded that it would not require emergency room visits, frequent hospitalizations, additional workday breaks, or excessive time off from work. [AR 42.] Plaintiff argues that such an opinion is improper because Dr. Nafoosi did not listen to plaintiff's testimony regarding his pain before forming the opinion. [JS 5.]  There is no requirement in the Ninth Circuit, however, that a medical expert listen to a plaintiff's

testimony before assessing an RFC.  In addition, as discussed below, the ALJ properly found that plaintiff's testimony was not a credible indication of his functional limitations and, thus, Dr. Nafoosi's assessment may stand, even if it was made without taking the testimony into account. [AR 41.]

    **E.   ISSUE TWO: THE CREDIBILITY ASSESSMENT OF PLAINTIFF**

    During the supplementary hearing, plaintiff testified that he had abstained from using drugs for the previous four years. [AR 48.] Despite his abstinence, plaintiff claimed that he had been in three fights during the previous six weeks and still had thoughts about hurting other people. [AR 52.]  Plaintiff also admitted to wanting to direct an expletive at medical expert Malancharuvil and became resistant when asked about his prior criminal convictions.  [AR 55, 61.]  Additional reasons cited by plaintiff that precluded him from working were daily mood swings and medication side effects that kept him in a "state of fog." [AR 55, 59.]

    The ALJ rejected the credibility of plaintiff's subjective complaints, finding that they established no less of an RFC than described in the decision. [AR 14-15.]  The ALJ determined that plaintiff was non-functional when drinking and inconsistent in his testimony about his use of speed and his drinking problem. [AR 15.] The ALJ also noted that examining psychiatrist Linda Smith found plaintiff to be manipulative, argumentative and not credible. [AR 13.] In addition, the ALJ noted that plaintiff's treating physician noted discrepancies in plaintiff's claims regarding his memory problems. [Id.]  Plaintiff was also observed to be very defensive at the hearing. [Id.]  The ALJ concluded that these reasons collectively made plaintiff "not credible." [Id.]

Under the Ninth Circuit's standard for the evaluation of a claimant's credibility, the ALJ gave sufficiently "clear and convincing reasons" to reject plaintiff's subjective complaints. See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1148; Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). The record contains multiple instances where plaintiff made inconsistent statements regarding his drug and alcohol abuse and the extent to which he is impaired. Plaintiff contended that it is uncontradicted that he has been abstinent for four years prior to the administrative hearing of September 2003 [JS 5], but plaintiff's own statements provide the contradiction. Plaintiff initially told examining psychiatrist Linda Smith that he used drugs until 1998, but on a subsequent examination, he told Dr. Smith that he stopped using drugs in 1995. [AR 276, 350.] Plaintiff later told his treating physicians that he used drugs one month prior to a hospitalization in September 2001 for a suicide attempt. [AR 391.] He then later told a social worker that he did not remember when he last used drugs. [AR 469.] The treating physician observed, however, that there was a mismatch between plaintiff's complaints about his ability to remember things and his actual ability to recall. [AR 450.] These discrepant statements regarding plaintiff's drug use and impairments provide clear and convincing reasons to find plaintiff less than credible. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)(claimant's conflicting statements about drug use were properly used to reject credibility; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(inconsistencies in testimony may be a factor in rejecting claimant's credibility).

In addition, plaintiff challenges the ALJ's observation of

plaintiff's defensive attitude at the hearing to discredit his testimony, asserting that such defensiveness can be attributed to the fact that he is mentally ill. [JS 10.]  The record indicates, however, that the ALJ admonished plaintiff for being evasive about his criminal record and advised him that telling the truth would make him more believable. [AR 61-62.]  The plaintiff complied by answering forthrightly each subsequent question about his criminal history. [AR 62.]  There was no evidence that plaintiff's defensive demeanor at the hearing arose from a mental illness.  Examining psychiatrist Smith, who similarly found plaintiff to be defensive, melodramatic and uncooperative, did not attribute plaintiff's attitude to a mental illness. [AR 352.]  Instead, plaintiff's lack of cooperation, coupled with his multiple inconsistent statements, comprised clear and convincing reasons to find him less than credible.  See Tonapetyan, 242 F.3d at 1148 (claimant's attitude at the hearing, tendency to exaggerate, lack of cooperation at the consultative examination and inconsistent statements were legally sufficient to find claimant not credible.)

    Finally, plaintiff argues that the ALJ improperly failed to consider a Third Party Questionnaire completed by plaintiff's father, which stated that plaintiff "doesn't get along with anyone," suffers from paranoia and delusions, and has "lost grip with reality." [JS 11, AR 215-217.]  In the Ninth Circuit, lay testimony by family members in a position to observe a claimant's symptoms and daily activities are competent evidence and must be considered in determining how an impairment affects a claimant's ability to work.  20 C.F.R. §404.1513(d)(4); Smolen v. Chater, 80 F.3d 1273, 1288-89 (9th Cir. 1996).  However, an ALJ may discount such lay testimony if it

conflicts with the medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Here, although the ALJ failed to discuss the Third Party Questionnaire, any statements of disability contained therein would have conflicted with the medical evidence in the record, which contained twelve opinions from eleven doctors (comprised of two medical experts, four examining physicians and five state agency review physicians) that plaintiff is not disabled. [AR 40, 64, 279, 283, 287, 313, 319, 326, 344, 354, 363, 368.] Because the Third Party Questionnaire could not have been credited due to its conflict with the medical evidence, the ALJ's failure to discuss it was not an error requiring reversal. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(ALJ is not required to discuss evidence that is neither significant nor probative).

**F. ISSUE THREE: PLAINTIFF'S MENTAL IMPAIRMENTS**

Notwithstanding the limitations that plaintiff experiences from his back problems and hepatitis C, the crux of his disability claim appears to be that his mental impairments (with their most extreme manifestations in suicidal and homicidal thoughts) prevent him from working. [AR 52.] Plaintiff's multiple challenges to the ALJ's findings regarding his mental impairments are that the ALJ ignored evidence that plaintiff has a personality or organic brain disorder, improperly relied on contradictory psychiatric evidence, and failed to develop the record regarding plaintiff's mental retardation. [JS 6, 14-15.]

Given that the ALJ counted plaintiff's personality disorder as "severe" in Step Two of the sequential evaluation, plaintiff appears to be making an additional Step Three argument that his conditions

meet or equal Listings 12.08[4] and 12.02[5]. [JS 14.] To support this argument, plaintiff cites evidence that he was diagnosed as a sociopath and as having a psychotic disorder. [AR 391, 394.] The diagnosis of sociopath, however, occurred in 1983. [AR 390, 391.] The diagnosis of a psychotic disorder occurred in September 2001, when plaintiff was hospitalized following a suicide attempt. [AR 387, 394.] Subsequent to both diagnoses, an examining psychiatrist and a state agency review physician opined that plaintiff did not have any mental impairments that rendered him disabled. [AR 354, 368.] See Lester, 81 F.3d at 833 (medical opinion that is later in time and based on more complete evaluation of plaintiff's condition is entitled to greater weight). In particular, the state agency review physician opined that the September 2001 hospitalization was attributable to plaintiff's use of drugs and/or alcohol. [AR 368.] Thus, the probative value of the

---

[4] Listing 12.08 *Personality Disorders*: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress....[and result] in at least two of the following ["B" Criteria]: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

[5] Listing 12.02 *Organic Mental Disorders*: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities....with at least two of the ["B" Criteria][see n. 4]; OR at least one of the ["C" Criteria]:... 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living environment, with an indication fo continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

earlier medical evidence is questionable.

Even if the evidence were credited, it would be insufficient to meet or equal the requirements of Listings 12.08 and 12.02. That plaintiff was merely diagnosed with certain mental impairments is legally insufficient to satisfy the requirements of the listings, as there must also be findings shown in the listings of those impairments. See Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985); 20 C.F.R. § 416.925(d). There is no medical evidence that plaintiff's impairments satisfy the "B" criteria of Listing 12.08 or the "B" or "C" criteria of Listing 12.02. On the other hand, state agency review physicians opined that plaintiff's mental impairments did not meet or equal the listings. [AR 293, 381.] Similarly, examining psychiatrist Smith opined that there "was no evidence whatsoever of bipolar affective disorder or post-traumatic stress disorder or depression or anxiety." [AR 352.] Further, medical expert Malancharuvil testified that plaintiff did not satisfy the "B" and "C" criteria of the listings and that the proposition that plaintiff met any of the requirements of listing 12.02 (organic mental disorder) was just "conjecture on my part." [AR 64, 67.]

Plaintiff takes issue with the ALJ's credit of Dr. Malancharuvil's testimony, arguing that it was self-contradictory because Dr. Malancharuvil's conclusion that plaintiff did not meet or equal the listings was undermined by his subsequent caveat that he can only "guess" what plaintiff's impairments would be in the absence of substance abuse. [JS 15.] The remainder of the testimony, however, indicated any alleged inconsistency or hesitation by Dr. Malancharuvil was immaterial. Dr. Malancharuvil went on to imagine the worst case scenario, where plaintiff's inability to interact with people remained

13

"as virulent" when he was completely sober as when he was abusing drugs. [AR 64.] Even in such a scenario, plaintiff was found capable of performing light work, albeit with limited interaction with others. [Id.] Thus, Dr. Malancharuvil's testimony did not contain any internal inconsistency suggesting that plaintiff's mental impairments were more severe than the doctor would admit.

Finally, plaintiff argues that the ALJ improperly failed to develop the record regarding his mental retardation. [JS 6, 16.] Plaintiff offered no evidence, however, of retardation, and the treating records of plaintiff's September 2001 hospitalization were silent regarding any possible retardation. On the other hand, examining psychiatrist Smith twice observed that plaintiff displayed no obvious psychomotor agitation or retardation. [AR 277, 352.] Under these circumstances, the ALJ did not have a duty to develop the record regarding any possible retardation.

## V. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: December 15, 2005

_____/s/_____
CARLA M. WOEHRLE
United States Magistrate Judge